```
                  UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ALABAMA
                       SOUTHERN DIVISION
```

JOHN P. BURDETTE,              }
                               }
     Plaintiff,                }
                               }     CIVIL ACTION NO.
     vs.                       }
                               }     CV 96-AR-1154-S
DANIELI OF AMERICA, INC.,      }
                               }
     Defendant.                }

## MEMORANDUM OPINION

The court has before it the motion of defendant, Danieli of America, Inc. ("Danam"), for summary judgment. Plaintiff, John Burdette ("Burdette"), an ex-employee of Danam, alleges that Danam violated the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.* ("ADEA"), by discharging him from his position as a regional manager, failing to promote him to the position of managing director,[1] and retaliating against him in response to a charge of discrimination Burdette filed against his previous employer, Birmingham Steel. Finding that no genuine issues of material fact exist, this court determines that summary disposition under Rule 56 is appropriate.

---

[1] Burdette concedes that his failure to promote claim is time barred and that Danam's motion for summary judgment is due to be granted as to this claim. (Burdette's Brief in Opposition to Motion for Summary Judgment at n.1). Accordingly, Danam's motion for summary judgment as to this claim shall be granted.

## I. Pertinent Undisputed Facts

Burdette, a sixty-five year old male, commenced working for Danam on or about February 1, 1993. He was sixty-one years old when he was hired by Danam. He was hired by Giancarlo Lavaroni ("Lavaroni"), a manager with Danam and Danieli & C. S.p.A. ("Danieli & C."), to be a regional manager in the United States. Burdette entered into an employment agreement with Danieli & C. for Danam.

Danam is a North Carolina corporation, which is a wholly owned subsidiary of Danieli Corporation. Danieli Corporation purchased Danam on July 1, 1994, from Danieli & C., an Italian corporation which owned 20%, and Industrielle Beteiligung, a Luxembourg company which owned 80%. Danieli Corporation is also the parent of Danieli Wean, Inc. ("Danieli Wean"), a sister corporation of Danam.

Danam is in the business of marketing and selling in the United States steel equipment, that is manufactured by Danieli & C. in Italy. Gianpietro Benedetti ("Benedetti") served as president for both Danam and Danieli & C. Likewise, Cecilia Danieli served as an officer in both Danam and Danieli & C. Danam employs seven employees, although, it shared the services of one employee, Laura Pagano, with Danieli & C. In addition, Danam shared office space and payroll services with its sister

2

corporations, for which it paid a fee.

Danam maintains its own operation. The management of Danam handles the day-to-day operations. Danam sets its own hours, has its own telephone listing, has not and does not commingle funds with any other corporations and is not responsible for the debts of any other corporations. Furthermore, it provides its employees with employee manuals and has its own employment policies. Danam's management controls the hiring, firing, evaluations, promotions, compensation and discipline of employees.

Prior to coming to work for Danam, Burdette worked for Birmingham Steel. After Birmingham Steel terminated him, Burdette filed a charge of age discrimination against Birmingham Steel with the EEOC.

Thereafter, Burdette was hired by Danam on or about February 1, 1993, after negotiations in Italy with Lavaroni. Burdette was hired to be Danam's regional manager. However, he requested and it was agreed that due to his dispute with Birmingham Steel he would not have to call upon it. Upon employment, Burdette met with Cecilia Danieli and she told him that she wanted him to recruit and train some aggressive young men in the United States to take over for him when he retired.

On March 1, 1993, forty-two year Costas Bourtsos

("Bourtsos") was hired as another regional manager. Both he and Burdette reported to Lavaroni, who was the general manager of Danam. In August 1993, Bourtsos was promoted to general manager. Thereafter, Burdette reported to and was supervised by Bourtsos. As general manager, Bourtsos was responsible for the day-to-day operations of Danam, including but not limited to the hiring and firing of personnel.

Burdette was the regional manager for the Southern and Eastern areas of the United States and worked out of his home in Birmingham, Alabama. His primary job was to sell steel manufactured by Danieli & C. to customers in the United States. Accordingly, he spent the majority of his time traveling to customers and prospective customers. On or about October 6, 1993, Burdette received a memo informing him that he was not to call upon Birmingham Steel because it had expressed to Danam its desire that Burdette not contact it.

On or about March 1, 1994, forty-two year old Keith Bacon was hired as a regional manager. Thereafter, on or about July 1, 1994, thirty-nine year old David Cofarro was hired in a sales capacity. Subsequently, Bourtsos referred to the new hires as kids and to himself and Burdette as the old men.

In June 1994, Burdette was informed that he needed to rectify problems with excessive travel expenses. Burdette

4

responded to this in July 1994, by stating that his travel was disorganized and somewhat excessive but that based on things as they presently existed he could forsee no way he could lower his travel expenses. In addition, in June 1994, Burdette agreed that the entire salesforce, including himself, had failed to meet sales expectations during the fiscal year 1993.

On or about August 4, 1994, Burdette received a hand delivered letter from Bourtsos informing him that he was terminated. The letter did not provide a reason for his termination but Bourtsos orally gave the reason as organizational. Bourtsos spoke with Ronald C. Weisenstein, Human Resources Director of Danieli Corporation, both before and after he terminated Burdette.

Thereafter, Burdette's territory was divided up among the remaining salesforce. Furthermore, after his termination, Burdette received letters regarding COBRA and other benefits on the letterhead of Danieli Corporation and Danieli Wean.

## II. Analysis

### A. *Rule 56*

Rule 56 states, in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law. F. R. Civ. P. 56(c). The obvious was stated by the Eleventh Circuit as follows: "[s]ummary judgment is appropriate where there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." <u>Turnes v. AmSouth Bank, N.A.</u>, 36 F.3d 1057, 1061 (11th Cir. 1994). Danam has invoked Rule 56.

### B. *Employer pursuant to the ADEA*

Danam asserts that Burdette's ADEA claims should be dismissed because Danam does not employ the requisite number of employees in order to be covered by the ADEA and therefore that Danam is not an "employer" within the meaning of the ADEA. Accordingly, the only question before the court, if dispositive, is whether Danam is an employer pursuant to the ADEA, so as to invoke federal subject matter jurisdiction. Section 630(b) of the ADEA defines employer as an entity "engaged in an industry affecting commerce [that] has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or proceeding calendar year."

It is undisputed that Danam only employed seven employees during the relevant time period. (Burdette's Brief in Opposition at 16). Consequently, Danam, in and of itself, is not covered under the ADEA. Burdette contends, however, that Danam and

6

Danieli Corporation, Danieli & C., and Danieli Wean should be treated as a single entity and that their respective employees should be aggregated to meet the statutory minimum number of employees pursuant to the ADEA. Danam is a wholly owned subsidiary of Danieli Corporation, is a sister corporation of Danieli Wean and is alleged to be controlled by Danieli & C.

"As a general rule, a parent company is considered a separate corporate entity from its wholly owned subsidiary." *Bruce v. S & H Riggers and Erectors, Inc.*, 732 F. Supp. 1172, 1175 (N.D. Ga. 1990). Likewise, corporations that possess the same owners are usually considered separate and distinct entities from one another. *See Rogers v. Sugar Tree Products, Inc.*, 7 F.3d 577, 582-83 (7th Cir. 1993). However, where the entities are "highly integrated with respect to ownership and operations," they will be considered to be a single employer. *McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 933 (11th Cir. 1987)(quoting *Fine v. Gold Kist, Inc.*, 514 F. Supp. 722, 726 (N.D. Ala.), aff'd, 664 F.2d 295 (11th Cir. 1981)).

To determine whether entities are so interrelated that they should be considered one employer for ADEA purposes, the court applies the four-part "integrated enterprise" test. *See McKenzie*, 834 F.2d at 933. The court looks to the following four criteria: (1) interrelation of operations; (2) centralized

7

control of labor relations; (3) common management; and (4) common ownership or control. *See id*. While all four criteria are considered in making a determination, courts have focused on the second factor--centralized control of labor relations. *See Mochelle v. Walter Inc.*, 832 F. Supp. 1302, 1304 (1993), *aff'd*, 15 F.3d 1079 (5th Cir. 1994). Upon sufficient evidence, courts will consider the separate business entities as integrated for purposes of determining whether an entity is an employer. *See Rogers*, 7 F.3d at 582. Accordingly, Burdette argues that Danam's employees must be aggregated with the employees of Danieli & C., Danieli Corporation, and Danieli Wean to determine whether the integrated enterprise has the requisite number of employees to fall within the ambit of the ADEA. While the second factor is most critical, the court will address each of the four factors.

The first factor is the interrelation of operations. The court finds that there exists little interrelation of operations between Danam and Danieli & C., Danieli Corporation, and Danieli Wean. Danam has its own board of directors, maintains its own bank accounts, its own accounting records, its own telephone numbers, did not and does not commingle funds with other entities, and was not and is not responsible for the debts of any other corporation. Furthermore, while it shared office space with other entities, including Danieli Wean in Ohio, Danam paid

8

rent to the other entities. Finally, the evidence reflects that only one employee of Danam, Laura Pagano who worked for Danam and Danieli & C., worked both for Danam and any other entity. *See Fike v. Gold Kist, Inc.*, 514 F. Supp. 722, 726-27 (N.D. Ala. 1980), *aff'd*, 664 F.2d 295 (11th Cir. 1981)(holding that occasional interchange of employees and officers and directors is not enough to demonstrate a "single employer"). Burdette asserts that the fact that Danam shared office space and payroll services with other entities, for which it paid a fee, and one employee, indicates that the entities should be considered an "integrated enterprise." However, such evidence in and of itself is not enough to establish the existence of a single employer; especially, in light of the fact that Danam is in the business of selling and marketing Danieli & C.'s product in the United States. *See Mochelle*, at 1305 (holding that close contact would not be unreasonable or unexpected when selling a company's product).

The second and more important factor is centralized control of labor relations. Of particular interest is who makes the employment decisions for Danam. It is clear that the management of Danam controls its day-to-day operations and likewise, controls the hiring and firing of its employees, compensation of its employees, employee discipline and promotions and job

9

assignments. In this case Bourtsos, managing director of Danam, supervised, evaluated, and made the firing decision regarding Burdette. However, Bourtsos did contact R.C. Weisenstein ("Weisenstein"), head of personnel for Danieli Corporation, both before and after he terminated Burdette. Consequently, Burdette asserts that this demonstrates that the companies had centralized labor relations. The fact that Bourtsos spoke with Weisenstein concerning Burdette's termination is not enough by itself to demonstrate centralized labor relations. The evidence reflects that Bourtsos, who ran the day-to-day operations of Danam, had the ability to hire and fire without conferring with anyone. Furthermore, Bourtsos alone made the decision to terminate Burdette.

The third factor is common management. The evidence reflects that two individuals, Benedetti and Cecilia Danieli, were officers or directors for both Danam and Danieli & C. The evidence does not reflect how active a role each took with respect to the two corporations. However, the fact that a more two individuals overlapped in management roles does not demonstrate a single employer. *See Dewey v. PTT Telecom Neth.*, 1995 WL 542447, 68 FEP (BNA) 1112 (S.D.N.Y. 1995)(overlap of board members is not enough to demonstrate "single employer").

The final factor is common ownership or financial control.

10

The Danieli Corporation wholly owns Danam. The other entities Danieli & C. and Danieli Wean do not have ownership interest in Danam.

After careful review of the four-part test, the evidence reflects that Danam and the other entities, Danieli Corporation, Danieli & C., and Danieli Wean, do not comprise an integrated enterprise. Danam is not a shell corporation. Instead, Danam is a separate corporation that employs only seven employees, and is therefore not an employer subject to the ADEA.

Even if the entities are an integrated enterprise, the exemption for foreign employers precludes plaintiffs pursuit of Danam. "The prohibitions of [the ADEA] shall not apply where the employer is a foreign person not controlled by an American employer." 29 U.S.C. § 623(h)(2)(1997). Courts have interpreted this language to mean that the relevant group for purposes of the ADEA is the foreign entities employees in the United States, not its global total of employees. *See, e.g., Robins v. Max Mara, U.S.A., Inc.*, 914 F. Supp. 1006, 1008 (S.D.N.Y. 1996). Accordingly, "[i]f an integrated enterprise (comprising foreign and domestic components) is controlled by the foreign component, then that enterprise shall be treated as a foreign company for the jurisdictional purposes of the anti-discrimination statutes." *Id.* at 1009.

11

Danam argues that, even if it is an integrated enterprise, it is controlled by Danieli & C., an Italian Corporation, and the integrated enterprise does not have enough employees in the United States to be covered by the ADEA. In fact, according to Burdette "[Danam] is a puppet corporation which is owned, directed, and controlled by Danieli & C." (Danam's Evidentiary submission Exh. 7 at 3).

Accordingly, this court must determine if the alleged integrated enterprise has the requisite twenty employees within the United States and therefore, is an employer under the ADEA. The question of whether Danam, as an integrated enterprise, is an employer under the ADEA is a question of fact and the summary judgment standard must apply. *See Garcia v. Copenhaver, Bell & Associates, M.D.'s,* 104 F.3d 1256, 1262-66 (11th Cir. 1997).[2] Danam argues and provides evidence that the alleged integrated enterprise does not have twenty employees within the United States. In response, Burdette provides the court with absolutely no help with respect to this factual issue. In fact, Burdette failed to respond to this argument in its brief in opposition. Instead, Burdette simply states that the entities should be considered as an integrated enterprise. Accordingly, because it

---

[2]Whether an entity is an employer under the ADEA is an element of the substantive claim and a basis for subject matter jurisdiction. *See Garcia,* 104 F.3d at 1266.

12

becomes clear that this alleged integrated entity does not have twenty employees within the United States, and therefore, this court does not have subject matter jurisdiction, Danam's motion for summary judgment is due to be granted.[3]

### III. Conclusion

The evidence and arguments submitted by the parties do not establish that any genuine issue of material fact exists with regard to Burdette's claim that Danam is an employer subject to the ADEA. Because no genuine issues of material fact exist with respect to subject matter jurisdiction, and also because this court determines that the Danam is entitled to judgment as a matter of law, Danam's Rule 56 motion will be granted by separate and appropriate order.

DONE this _11th_ day of July, 1997.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT COURT

---

[3] While this court does not reach the merits of this action because it lacks subject matter jurisdiction, it is clear that defendant would be entitled to summary judgment even if the ADEA applied.